**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.  No.  CR 04-670 MV

KENNETH BITSILLY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Sentencing Memorandum and Supplemental Sentencing Memorandum*, filed September 24, 2005 and February 18, 2005 respectively **[Doc. Nos. 16 and 22]**.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, ruled at Defendant's sentencing hearing that the two-level undue influence enhancement pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2A3.2(b)(2)(B) did not apply and that Defendant's advisory Guidelines sentence would be reduced pursuant to *United States v. Booker*, 543 U.S. ____, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).  The Court now sets forth the basis for its prior ruling in this Memorandum Opinion.

## BACKGROUND

In September 2003, a counselor at Pine Hill High School submitted a report to the Ramah Navajo School Board outlining concerns about Raphaela M., a 15-year old student who was pregnant by an older male.  The FBI initiated an investigation as a result of the report.  On October 16, 2003, an agent interviewed Raphaela at Pine Hill High School.  Raphaela told the agent that she was pregnant and that the father was Defendant Kenneth Bitsilly, who, at the time, was thirty-five years of age.  Raphaela further stated that she and the Defendant were living

together, that their relationship was "a good one," and that her mother approved. She told agents that the relationship was "entirely consensual." Raphaela gave birth to a baby girl, Kayariah Bitsilly, on April 30, 2004.

On October 16, 2003, agents interviewed Defendant outside his home in Pine Hill. Defendant stated that he and Raphaela began a relationship in April 2003. He said that they moved in together in May 2003 and at that time began a consensual sexual relationship. After this interview, Defendant was arrested. He later pleaded guilty to an Indictment charging him as follows:

> On or between May 1, 2003, and October 1, 2003, in Indian Country, in the State and District of New Mexico, the Defendant, KENNETH BITSILLY, an Indian, did knowingly engage in a sexual act with Raphaela M., an Indian juvenile, who had attained the age of twelve (12) years but not the age of sixteen (16) years, in that he intentionally engaged in contact between his penis and the vulva of Raphaela M.

In her victim impact statement, dated June 24, 2004, Raphaela wrote the following:

> Mr. Kenneth Bitsilly and I, Raphaela Rae M., met on May 12, 2003. We have been together now for over a year. Ever since I have been with Kenneth he has been a huge support for my family and for myself. We have both planned and agreed to have a baby. Kenneth has worked hard to financially support our baby, my family and also myself. My family has been in support of our relationship and has no objections to us being together. Kenneth's family also has agreed to our union and for us to be together. I pray that this all be taken into consideration when decisions are being made in regards to our relationship. Thank you.

After his arrest, Defendant was released, with conditions, to the La Posada Halfway House in Albuquerque. One of the conditions of his release was that he was not to have any

contact with Raphaela or his daughter, Kayariah. At the time of sentencing, Defendant stated that he had never seen his daughter.

In his first Sentencing Memorandum, Defendant argued that the undue influence enhancement pursuant to U.S.S.G. § 2A3.2(b)(2)(B) was unlawful under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and as applied. The Court postponed Defendant's sentencing in anticipation of the Supreme Court's *Booker* decision. After the Supreme Court issued its opinion in *Booker*, Defendant filed a Supplemental Sentencing Memorandum arguing that because the Guidelines were now advisory, he should be sentenced to probation based on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

The Court held Defendant's sentencing hearing on May 26, 2005. Defendant, Raphaela, and Raphaela's mother all addressed the Court. Raphaela and her mother expressed their support and love for Defendant and asked that the Court allow him to come home.[1] At the hearing, the Court found that Defendant had rebutted the presumption of undue influence and, accordingly, the two-level enhancement was inappropriate. After subtracting two levels from Defendant's total offense level, the Court sentenced Defendant outside the advisory Guidelines range pursuant to *Booker*.

### **DISCUSSION**

In *Booker*, the Supreme Court held that the Federal Sentencing Guidelines ("Guidelines") violated the Sixth Amendment. To remedy the constitutional problem, the Court excised 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act ("SRA") that made the

---

[1] In advance of sentencing, Raphaela and her family also submitted numerous letters to the Court attesting to their love for Defendant and their desire that he resume his relationship with Raphaela.

Guidelines mandatory, along with the appellate review provisions of 18 U.S.C. § 3742(e) and any cross-references to section § 3553(b)(1). Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions ... district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." *Id*. Further, the sentencing factors set forth in § 3553(a), "which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion." *Id*.

In all cases, to determine a reasonable sentence, this Court first will determine the appropriate advisory Guidelines range examining departure arguments and factual objections to the Presentence Report ("PSR"). The Court then will analyze whether, under *Booker*, Defendant merits a sentence outside of the advisory Guidelines range.

## I.     Advisory Guidelines Range

The PSR assigned Defendant a base offense level of 18 pursuant to U.S.S.G. § 2A3.2(a)(3).[2] This guideline covers criminal sexual abuse of a minor under the age of sixteen. The PSR also assigned Defendant a two-level enhancement for a special offense characteristic pursuant to § 2A3.2(b)(2)(B), which provides: "if a participant otherwise unduly influenced the victim to engage in prohibited sexual conduct...increase by 2 levels." With the enhancement, PSR determined the adjusted offense level to be 20. With a three-level adjustment for acceptance of

---

[2] The Court references the 2003 Edition of the Guidelines pursuant to U.S.S.G. § 1B1.11(b)(1): "If the Court determines the use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed."

-4-

responsibility, the PSR's calculation of Defendant's total offense level was 17.

### A.     Undue Influence Enhancement Pursuant to § 2A3.2(b)(2)(B)

Application Note 4 to § 2A3.2(b)(2)(B) states: "In determining whether subsection (b)(2)(B) applies, the Court should closely consider the facts of the case to determine whether a participant's influence over the victim compromised the voluntariness of the victim's behavior." In addition,

> in a case in which a participant is at least 10 years older than the victim, there shall be a rebuttable presumption, for purposes of subsection (b)(2)(B), that such participant unduly influenced the victim to engage in prohibited sexual conduct. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the victim.

*Id.* Defendant argues that he has rebutted the presumption of any undue influence and, accordingly, the enhancement pursuant to § 2A3.2(b)(2)(B) should not be applied. The government disagrees.

The Eleventh Circuit has held that "a district court considering an undue influence enhancement ... must focus on the offender's conduct." *See United States v. Root*, 296 F.3d 1222, 1234 (11th Cir. 2002). The *Root* Court identified "three types of power the Sentencing Commission stated sex offenders frequently use to manipulate minors": displaying an increased knowledge to influence the minor, using persuasive powers to influence the minor, and using superior resources to influence the minor. *Id.* at 1235-36.

While the Court finds that the rebuttable presumption of undue influence applies to this offense because of the twenty-year age difference between the Defendant and Raphaela, the Court finds that Defendant has rebutted this presumption. First, focusing on the conduct of the

-5-

Defendant, there is no evidence that he displayed an increased knowledge, that he used persuasive powers, or that he used superior resources to influence Raphaela. Second, the statements of both Raphaela and the Defendant compel the conclusion that their relationship has always been consensual. Raphaela states that they agreed and planned to have a baby together. Finally, Raphaela's family members state that they support their daughter's relationship with the Defendant and want him to come back to their home. For these reasons, the preponderance of the evidence does not support the two-level enhancement for undue influence. Accordingly, Defendant's total offense level without the enhancement is 15. The resulting advisory Guidelines range is 18 to 24 months.

## II.     Imposition of Sentence

After determining Defendant's advisory Guidelines range, the Court moves to the imposition of sentence. When determining whether a non-Guidelines sentence is appropriate, the Court considers the sentencing factors set forth in 18 U.S.C. § 3553(a). For ease of explication, the Court will group these considerations into four categories: the nature of the offense, the history and character of the defendant, the needs of the public and any victims of the case, and the advisory Guidelines range.

### A.     The nature of the offense

Defendant pleaded guilty to sexual abuse of a minor. While sex offenses committed against children must be taken seriously, the instant case is unusual and merits unique treatment. From the beginning, Defendant and Raphaela have been engaged in a consensual relationship. Raphaela did not report Defendant to the police, rather the FBI was notified of Defendant's relationship with her by a school counselor. Throughout the course of the case, Raphaela never

has stated that Defendant is violent or abusive in any way.  Quite the opposite, during the sentencing hearing, Raphaela repeatedly described Defendant as "helpful," "respectful," and "easy-going."

Raphaela told the Court that when she started dating Defendant, she quickly introduced him to her family because he was very special to her.  Soon after Defendant moved in with her, the two began talking about having a baby together.  She said that Defendant did not force her to have sexual intercourse with him; it was a joint decision.  Most importantly, Raphaela told the Court that she loves Defendant "for who he is" and that she wants him to return home so that they can be together and he can bond with his daughter.  Raphaela said that when he returns, she and Defendant plan to get married.  She also has plans to graduate from high school, which Defendant fully supports.

Raphaela's family, too, spoke glowingly of their daughter's relationship with Defendant and Defendant's contributions to their family.  At the sentencing hearing, Raphaela's mother referred to Defendant as her "son-in-law" and stated that the family welcomed Defendant as "a nice person."  She characterized his relationship with Raphaela as "loving."  Further, she stated that she approved of the relationship from its inception, even though she was aware of the age difference between Raphaela and Defendant.  Finally, she expressed that without Defendant around to support her and help her with the baby, Raphaela was "struggling" and often would cry because she missed him.  Before Defendant was arrested, she said that Defendant was helping her with her homework and buying her clothes.

Finally, at the hearing, Defendant himself expressed his strong feelings for Raphaela and Kayariah.  He said that he missed his "wife" and his baby.  According to Defendant, before he was

arrested, they had planned to get married and start a life together. He said that he wanted to go home so that he could support Raphaela and Kayariah, as well as the other members of her family. He informed the Court that after his arrest, he was not allowed to see Raphaela and that he was not allowed to be present when Kayariah was born or when she underwent several surgeries to correct a cleft pallet.  Even so, while at halfway house, Defendant continued to support them.

       These extraordinary facts separate Defendant's case from so many of the other sexual abuse cases that the Court regularly sees.  Many of those cases involve sexual predators, who abuse children for their own sexual gratification.  *See e.g., United States v. Robertson*, 350 F.3d 1109 (10th Cir. 2003) (defendant convicted of knowingly traveling in interstate commerce for the purpose of engaging in a sexual act with a minor; defendant engaged in contacts with an undercover officer to set up "fantasy tours" with young boys).  The day before Defendant's sentencing hearing, this Court sentenced a young man who had sexually abused two sisters.  The girls' father addressed the Court in tears, expressing how deeply the defendant had traumatized his daughters and the family.  The instant case presents a much different picture.  Raphaela and Defendant clearly are in love and miss one another.  Moreover, Raphaela's family and Defendant's family are supportive of their relationship.

      **B.**    **The history and character of the defendant**

       Defendant is a thirty-eight year old Navajo man.  Defendant's history is largely positive. As stated above, before his arrest, Defendant helped support Raphaela's family by paying their bills.  He assisted Raphaela with her homework and encouraged her to complete her education. Before his arrest, Defendant worked for the Navajo Housing Authority on the Navajo Reservation as an insulator, earning about $12 an hour.  Defendant's criminal history is limited to minor

alcohol-related offenses. At sentencing, Defendant stated that he has been receiving alcohol treatment.

### C.     The needs of the public and any victims of the crime

This case is also unique because Raphaela is not a traditional victim. At the sentencing hearing, she pleaded with the Court to allow Defendant to come back to her community and live with her again. She wants to create a family with him and their daughter. Moreover, protection of the public is not a great concern to the Court because Defendant has no history of child sexual abuse. This appears to be an isolated incident, motivated by love, not abusive behavior. Moreover, there is no evidence to suggest that Defendant is violent and thus a danger to the public at large.

### D.     Advisory Guidelines

After giving serious consideration to the advisory Guidelines range of 18 to 24 months, the Court finds that it is greater than necessary to satisfy the purposes of punishment and will not further the objectives of sentencing set forth in § 3553(a). Defendant has already been away from Raphaela and his daughter, both of whom he loves, for over a year. He was not able to be with his daughter while she went through serious surgeries for a cleft pallet. The Court does not see a reason to keep this family apart any longer. Accordingly, the Court finds that a sentence of probation is reasonable.

In reaching this conclusion, I again must emphasize the unusual and unique nature of this case. I have not anything like this in my eleven years on the bench. I do not believe that the Sentencing Commission contemplated such a situation when formulating the relevant Guideline provision. Further, I am convinced that there is nothing to be gained in the way of deterrence or

rehabilitation by incarcerating Defendant. Finally, a sentence of probation is not without punishment. For the rest of his life, Defendant must register as a sex offender and will be forced to carry with him the social stigma attached to that label.

By sentencing Defendant to probation, I do not intend to minimize the problem of child sexual abuse, nor excuse it. This is a case, however, that calls out for individualized treatment. "If the Supreme Court's ruling in *Booker* does anything, it gives a defendant hope that where the factors listed in Section 3553(a) warrant a lesser sentence than the Guidelines recommend, and where the Guidelines' goal of uniformity is not advanced, a judge can depart from the sentence recommended by the Guidelines." *United States v. Perez-Nunez*, 368 F. Supp. 2d 1265, 1270 (D.N.M. 2005). That is the case here. I am convinced that incarceration will be detrimental to all involved and that probation is a more appropriate sentence.

## CONCLUSION

At the sentencing hearing on May 26, 2005, the Court found that the undue influence enhancement pursuant to U.S.S.G. § 2A3.2(b)(2)(B) was not applicable. After considering the Sentencing Guidelines, the *Booker* decision, and 18 U.S.C. § 3553(a), the Court sentenced Defendant to a two-year term of probation, with special conditions set forth in the judgment. For the foregoing reasons, and the reasons stated in open court, this sentence is reasonable under all of the circumstances. This Opinion and Order shall be appended to Defendant's judgment and commitment form.

It is thereby **ORDERED** that Defendant is sentenced to a two-year term of probation.

**DATED** this 9th day of September, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for the United States:
Glynette Carson-McNabb

Attorney for Defendant:
Philip Medrano